IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **SPIKE BODY WERKS, INC.,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 20-cv-4771 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| **BYLINE BANK,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Spike Body Werks, Inc., Geneva Repair Shop, Inc., Nicnat LLC, and Pasquale Roppo (collectively, "plaintiffs") bring this action against defendants Byline Bank and Byline Bankcorp Inc., (collectively, "Byline" or "defendants") alleging discrimination based on race and national origin in violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §1691, *et seq*. Defendants have filed a motion for summary judgment, arguing that plaintiffs have: (1) failed to present sufficient evidence to show that Byline acted with discriminatory intent in violation of the ECOA; and (2) failed to present sufficient evidence of damages. For the reasons set forth below, the Court agrees that plaintiffs have failed to present sufficient evidence to create a triable issue of fact on their ECOA claim and defendants' motion for summary judgment, (Dckt. #72), is therefore granted.

**I.    LEGAL STANDARD**

    **A.    Standard for Summary Judgment**

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present

1

if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment *unless* it is a genuine dispute as to a material fact).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248. Of course, "[i]t is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

In determining whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cnty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). Yet, the nonmovant "is not entitled to the benefit of inferences that are supported only by speculation or conjecture." *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). Ultimately, summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

### B. Requirements of Local Rule 56.1

Northern District of Illinois Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this District. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). To this end, Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). In turn, Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The non-moving party must then respond to the movant's statement of material facts. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). The response must consist of numbered paragraphs corresponding to the numbered paragraphs in the moving party's Local Rule 56.1 statement, and each response "must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." LR 56.1(e)(1)-(2). "A response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." LR 56.1(e)(2). Instead, if the opposing party wishes to assert facts not set forth in the moving party's LR 56.1 statement, it may submit a statement of additional material facts, which also must comply with LR 56.1(d). If a party fails to respond to the Rule 56.1 statement of material facts, those facts may be deemed admitted to the extent they are supported by the evidence in the record. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); LR 56.1(e)(3).

In this case, Byline filed a Local Rule 56.1 statement of material facts with its motion for summary judgment, which included proper citations to the evidentiary material supporting each fact. (Dckt. #74 ("DSOF")). In response, plaintiffs filed what they titled "Plaintiffs' Response to FRCP56(C)(1) and Local Rule 56.1 Statement of Undisputed Facts." (Dckt. #77 ("DSOF Resp.")). However, as Byline correctly notes, plaintiffs' purported response does not include numbered paragraphs that correspond directly to Byline's statement of facts, nor do plaintiffs admit or dispute (in whole or in part) *any* of Byline's asserted facts. Instead, plaintiffs at times repeat verbatim Byline's facts – without indicating whether they are admitted or disputed – and at other times add their own additional facts. But, as the Seventh Circuit has acknowledged, "it is improper, and a violation of Local Rule 56.1, for the nonmovant to add additional facts to his response; the additional facts belong in a separate statement of additional facts." *Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 717 (N.D.Ill. 2016) (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)).

For these reasons, the Court in its discretion deems Byline's statement of material facts admitted to the extent that the facts asserted therein are supported by the evidence in the record. *Keeton*, 667 F.3d at 880; *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *Boyd*, 225 F.Supp.3d at 717 ("The court finds that plaintiff failed to comply with Local Rule 56.1 by adding additional facts to his responses to defendants' statement of material facts and therefore disregards them. The facts to which the improper responses are directed are deemed admitted."). Moreover, to the extent that plaintiffs intended their response to serve as a separate

4

statement of additional facts – to which Byline has since responded, (Dckt. #79) – the Court will consider only those statements of additional facts that are properly supported by the record.

## II.     FACTUAL RECORD

The following facts are undisputed unless otherwise noted:

Plaintiff Pasquale Roppo ("Roppo") is an Italian immigrant who emigrated from Italy to the United States in 2003 and later opened his auto repair shops, Spike Body Werks, Inc. and Geneva Repair Shop, Inc. His first language is Italian. According to the complaint, plaintiffs negotiated two business loans with Byline Bank between February 2017 and December 2017. (Dckt. #22 ¶9). Plaintiffs maintain that during those negotiations, Roppo shared his immigration story with Byline's representatives, Thomas Lyons and Eliana Metropolis, and also made Byline aware that Italian was his first language. (*Id*. ¶11). Plaintiffs also maintain that they repeatedly expressed to Byline that a line of credit was a condition precedent for plaintiffs to close on the loans. (*Id*. ¶14).

Ultimately, in December 2017, plaintiffs obtained the two business loans from Byline, one in the original principal amount of $2,706,000 (the "First Loan"), and the other in the original principal amount of $324,000 (the "Second Loan"). (DSOF ¶13). Roppo personally guaranteed both loans and Byline required certain collateral to secure the loans. (*Id*.).

As of November 2019, plaintiffs' First Loan with Byline was past due by more than 90 days and plaintiffs' Second Loan was past due by more than 30 days. (*Id*. ¶¶14, 17). As a result, in November 2019, Byline assigned loan officer Michael Van Ede – who only began working for Byline in October 2019 – to assist with a loan workout of plaintiffs' defaulted loans. (*Id*. ¶¶11-12). It is undisputed that Van Ede had no involvement with plaintiffs' loans prior to November 2019 and also that Van Ede had no authority to extend a line of credit to plaintiffs at any time

during his involvement with the loans. (*Id.* ¶¶12, 35; *see also* PSOF Resp. ¶15 ("Despite [Van Ede] not being a person authorized to make any decisions on behalf of Byline . . .")).

Van Ede visited Roppo's business in person to discuss the loans on November 27, 2019. (DSOF ¶15). By that time, plaintiffs were past due over $113,000 on the first loan and over $11,000 on the Second Loan. (*Id.* ¶16). Plaintiffs were also delinquent on real estate taxes for their business building in the amount of approximately $21,000 at the time of the meeting. (*Id.* ¶17). Plaintiffs do not contend that Van Ede made any discriminatory statements at the November 27, 2019 meeting. (*Id.* ¶15).

On January 2, 2020, Roppo spoke to Van Ede on the telephone about the loans. (PSOF Resp. ¶5). One of Roppo's customers, Doug Hendon, was also present during the telephone call, which was conducted over speaker phone. (*Id.* ¶6). According to Roppo and Hendon, during the January 2, 2020 call, Van Ede became angry with Roppo after he explained that he could not make any payments to Byline. (*Id.* ¶7). Specifically, Roppo and Hendon contend that Van Ede stated the following:

> This is the problem with you Italian immigrants. If you do not make your loan payments as you agreed to with Byline, I will make you homeless. We will take everything from you and will send you back to your country.

(*Id.*). Van Ede denies making this statement or any other discriminatory statements to Roppo during the January 2, 2020 call or at any other time. (DSOF ¶11). In any event, plaintiffs have conceded in their discovery responses, (Dckt. #74-1 at 1-2), at Roppo's deposition, (Dckt. #74-2 at 8), and in direct response to Byline's motion for summary judgment, (PSOF Resp. ¶19), that the January 2, 2020 comment was the only discriminatory comment Van Ede ever made to Roppo and that no other individuals at Byline ever made any discriminatory comments to him.

Between the time the parties closed on the two business loans in December 2017 and the time this lawsuit was filed in mid-August 2020, Byline did not extend an additional line of credit to plaintiffs despite plaintiffs' repeated requests. (*Id*. ¶28). According to Byline's Small Business Capital Chief Operating Officer, Tom Carls, this decision was always based on financial reasons and not because of Roppo's Italian national origin or race. (*Id*.). Specifically, beginning in November 2019, Byline was not willing to consider a line of credit or any new or additional extension of credit to plaintiffs because plaintiffs were in default on both loans. (*Id*. ¶30).

On July 1, 2020, as a result of plaintiffs' default on the loans, Byline filed a Verified Complaint to Foreclose Commercial Mortgages and for Other Relief in the Circuit Court of Kane County seeking to foreclose on the mortgages and other collateral used to secure the loans. (DSOF ¶31). Plaintiffs initiated this action shortly thereafter on August 14, 2020. Ultimately, on June 28, 2023, the Circuit Court of Kane County granted Byline's motion for judgment of foreclosure and sale. (*Id*. ¶34).

In their first amended complaint, (Dckt. #22), plaintiffs assert a claim for race and national origin discrimination in violation of the ECOA.[1] According to plaintiffs, Byline violated the ECOA when it, among other things, denied plaintiffs' request for a line of credit over the course of the loans due to Roppo's race and national origin. Plaintiffs also alleged that Byline engaged in discriminatory practices when it charged plaintiffs "higher fees and costs not based on their creditworthiness or other objective criteria related to borrower risk, but because of

---

[1] Plaintiffs also asserted various state law claims for breach of contract and the covenant of good faith and fair dealing, fraudulent inducement, and fraudulent concealment and misrepresentation. The Court dismissed those claims for failure to allege the breach of a written agreement on June 9, 2022, leaving plaintiffs with only their ECOA claim. (Dckt. #37).

7

their race, and for better lack of word, 'ignorance' as to terms and conditions due to [a] language barrier." (Dckt. #22 ¶36). Byline now moves for summary judgment on plaintiffs' ECOA claim.

### III. ANALYSIS

In their motion for summary judgment, defendants argue that even if the Court accepts that Van Ede made the disparaging comments during the January 2, 2020 phone call, plaintiffs have: (1) failed to present sufficient evidence to show that Byline acted with discriminatory intent in violation of the ECOA; and (2) failed to present sufficient evidence of damages. Because the Court agrees on the first point, it need not address the second.

#### A. The Equal Opportunity Credit Act

The ECOA prohibits a creditor from "discriminat[ing] against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race . . . [or] national origin." 15 U.S.C. §1691(a)(1). "To succeed on an ECOA claim, plaintiffs must establish that they were 'applicants,' as defined by the Act, and that the creditor treated them less favorably because of their race." *Sims v. New Penn Fin. LLC*, No. 3:15-CV-263-MGG, 2018 WL 1523212, at *5 (N.D.Ind. Mar. 28, 2018), *aff'd*, 906 F.3d 678 (7th Cir. 2018). "The statute defines 'applicant' as 'any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." *Est. of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011), *quoting* 15 U.S.C. §1691a(b). Prohibited conduct by lenders under the ECOA includes "refusing to extend credit or us[ing] different standards in determining whether to extend credit" or "treating a borrower differently in servicing a loan or invoking default remedies." *Sims*, 2018 WL 1523212, at *6 (cleaned up) (citing *Policy Statement on Discrimination in Lending*, 59 FR 18266-01 (Apr. 15, 1994)).

8

Generally speaking, in the Seventh Circuit, a plaintiff alleging discrimination in the credit context must demonstrate discriminatory intent in "a conventional way" by using direct or circumstantial evidence, as opposed to the burden shifting method of *McDonnell Douglas*. *Hughes v. Inland Bank & Tr.*, No. 15 C 5006, 2017 WL 3263475, at *2 (N.D.Ill. Aug. 1, 2017) (citing *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712 (7th Cir. 1998)); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Indeed, as the Seventh Circuit has explained, "burden-shifting is generally inappropriate in credit discrimination cases because the competitive setting in which one applicant gains at the expense of another–a situation thought 'sufficiently suspicious' to shift the burden of proof to the defendant in cases where the disadvantaged applicant is a member of a protected class–is generally not present in the loan context." *Greer v. Bank One*, 28 Fed.Appx. 553, 555 (7th Cir. 2002); *see also Latimore*, 151 F.3d at 712.

Accordingly, where, as here, plaintiffs' claims focus on their treatment *after* receiving a loan, *i.e.*, Byline's decision not to extend an additional line of credit, plaintiffs must demonstrate discriminatory intent through the conventional method by marshaling direct or circumstantial evidence of Byline's discriminatory intent.[2] *Hughes*, 2017 WL 3263475, at *2; *see also Brooks v. O'Connor Chevrolet, Inc.*, No. 02-2478, 2003 WL 22427795, at *3 (N.D.Ill. Oct. 23, 2003) ("In order to prove discrimination under the ECOA, Plaintiff must submit sufficient direct or circumstantial evidence of discrimination to create a triable issue of fact."). "Direct evidence of discrimination is evidence which in and of itself suggests that someone with managerial authority was animated by an illegal . . . criterion." *Joyce v. Chicago Park Dist.*, 483 F.Supp.2d 678, 683 (N.D.Ill. 2007) (cleaned up). "Circumstantial evidence consists of suspicious timing, ambiguous statements, suspect behavior toward those in the protected group, or reasons for

---

[2] The Court notes that neither party cites to the appropriate standard in the Seventh Circuit for prevailing on a claim under the ECOA.

9

acting that are not worthy of belief." *Hughes*, 2017 WL 3263475, at *2 (citing *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720-21 (7th Cir. 2005)). Furthermore, all evidence – direct and circumstantial – must be evaluated as a whole in a discrimination case. *See, e.g.*, *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016)

### B. Plaintiffs have failed to present sufficient evidence to create a triable issue of fact on their ECOA claim.

Here, even presuming for purposes of this motion that: (1) Roppo's Italian heritage constitutes a "race" for purposes of the ECOA and that the corporate plaintiffs are cloaked with his racial identity;³ (2) plaintiffs properly applied for the line of credit so as to warrant protection as "applicants" under the ECOA; and (3) that Van Ede made the disparaging remark about Italian immigrants, plaintiffs have failed to submit sufficient evidence – whether direct or circumstantial – to create a triable issue of fact as to whether Byline engaged in racial discrimination in violation of the ECOA.

Again, plaintiffs assert that Byline discriminated against them by failing to provide them with the previously promised line of credit after the parties closed on the two business loans.⁴

---

³ *See* Dckt. #19 at 7-8, 10-12 (citing cases); *New Louisiana Holdings, LLC v. Arrowsmith*, No. 11 C 5031, 2012 WL 6061710, at *4-8 (N.D.Ill. Dec. 4, 2012).

⁴ The Court acknowledges that, as *pled*, plaintiffs' claim under the ECOA also appeared to include defendants' alleged discriminatory conduct in negotiating the loan in the first place in light of his language barrier and in imposing higher fees and costs not based on plaintiffs' creditworthiness. But plaintiffs present *no* sufficient evidence or supporting authority regarding these aspects of their claim in response to summary judgment. Similarly, plaintiffs' assertion that the loans are "void or *void ab initio*" because Byline promised plaintiffs a line of credit to improperly induce them into signing the loans is offered without any support, factually or legally, and appears to be grounded in claims previously dismissed by the Court. Having failed to raise or properly develop these arguments in response to defendants' motion for summary judgment, they are considered waived. *See United States v. Elst*, 579 F.3d 740, 747 (7th Cir.2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."); *see also Laborers Int'l Union v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 2003) (arguments not presented to the district court in response to a summary judgment motion are waived).

For the period between the closing of the loans in December 2017 and when plaintiffs defaulted on the loans on or before October 2019, the *only* evidence plaintiffs have come forward with to demonstrate Byline's discriminatory intent are plaintiffs' allegations (supported solely by Roppo's own self-serving testimony) that Roppo shared his immigration story with Byline's employees while negotiating the loans and that Byline was well-aware of his limitations in speaking English. In other words, plaintiffs ask the Court – and ultimately would ask the trier of fact – to infer that Byline's decision to deny plaintiffs' line of credit prior to the time that Van Ede began working at Byline was discriminatory because Byline *knew* Roppo was an Italian immigrant and that English was not his first language.

It is well-settled, however, that although "[a] defendant's knowledge of a plaintiff's race may be necessary to prove discriminatory intent . . . . it is not, without more, *sufficient* to support such an inference."[5] *Weiss v. La Suisse*, 260 F.Supp.2d 644, 657 (S.D.N.Y. 2003) (emphasis in original; citation omitted); *James v. Scott*, No. 3:07-CV-0419-L, 2007 WL 9760447, at *3 (N.D.Tex. Dec. 12, 2007), *report and recommendation adopted*, No. 3:07-CV-0419-L, 2007 WL 9760446, at *3 (N.D.Tex. Dec. 28, 2007) (same). In short, plaintiffs' speculation that Byline's knowledge of Roppo's nationality caused it to deny plaintiffs a line of credit is insufficient to stave off summary judgment. *See, e.g.*, *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016) ("[O]ur favor toward the nonmoving party does not extend to drawing inferences that are supported only by speculation or conjecture . . . . Plaintiffs must come forward with specific facts showing that there is a genuine issue for trial.").

---

[5] Indeed, the only reasonable inference to be drawn from the fact that Byline loaned plaintiffs over $3 million *after* learning of Roppo's Italian heritage is that Byline did not hold his Italian heritage against plaintiffs. Of course, the Court does not consider this inference in determining this motion because it favors Byline (the moving party). The focal point is whether plaintiffs have marshalled any evidence that supports an inference that Byline discriminated against them. As shown herein, plaintiffs have failed to do so.

11

This leaves Van Ede's January 2, 2020 telephone remark about Italian immigrants as plaintiffs' only potential evidence sufficient to ward off defendants' motion for summary judgment. At first glance, this reprehensible remark might appear to amount to direct evidence of Byline's discriminatory intent. But this would only be so if Van Ede were Byline's decisionmaker with respect to determining whether Byline would grant plaintiffs a line of credit. *See, e.g.*, *Joyce*, 483 F.Supp.2d at 683 (the "most common example of direct evidence is a statement by the *decision-maker* that betrays a discriminatory intent.") (emphasis added). Van Ede, however, was *not* Byline's decisionmaker. To the contrary, the undisputed record evidence shows that Van Ede had absolutely *no* authority to extend a line of credit to plaintiffs at any time during his involvement with plaintiffs and their loans. Nor do plaintiffs assert that Byline's actual decisionmaker served as the "cat's paw" for Van Ede's bias (even presuming that this theory of liability applies in an ECOA action).[6] Thus, Van Ede's statement – as disparaging as it was – does not provide sufficient evidence to create a genuine issue of material fact as to whether Byline acted with discriminatory intent when it declined to provide a line of credit to plaintiffs. *See O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 986 (7th Cir. 2001)

---

[6] As the Seventh Circuit has explained:

> The cat's paw theory of liability applies in the employment discrimination context when a biased subordinate who lacks decision-making power uses the formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action. . . . thus, the cat's paw theory requires both evidence that the biased subordinate actually harbored discriminatory animus against the victim of the subject employment action, and evidence that the biased subordinate's scheme was the proximate cause of the adverse employment action.

*Johnson v. Koppers, Inc.*, 726 F.3d 910, 914 (7th Cir. 2013) (cleaned up); *Bradshaw v. Vilsack*, 560 F.Supp.3d 101, 143 (D.D.C. 2021) (noting that neither the parties nor the court found any cases applying cat's paw liability to an ECOA claim).

("Statements by a non-decision-maker that amount to mere speculation as to the thoughts of the decision-maker are irrelevant to an inquiry of discrimination.").

Indeed, there is no evidence that Van Ede had any impact on Byline's actions concerning plaintiffs' request for a line of credit. Once more, plaintiffs were in default on both of their business loans as of October 2019 and Byline declined to grant them a line of credit on this ground before Van Ede became involved with plaintiffs' loans in November 2019. Thus, Byline's refusal to grant plaintiffs a line of credit based on their loan defaults from November 2019 on – per the affidavit of Byline's Chief Operating Officer Tom Carls[7] – was a continuation of its facially legitimate prior practice. Given the "dearth of evidence" from plaintiffs, this explanation of Byline's conduct is "completely worthy of belief." *Sims*, 2018 WL 1523212, at *11.

In sum, to withstand defendants' motion for summary judgment on the ECOA claim, plaintiffs had to come forward with direct and/or circumstantial evidence sufficient to demonstrate defendants' discriminatory intent. *Davis*, 633 F.3d at 539. Because they have failed to do so, no reasonable jury could find that Byline discriminated against plaintiffs based on race or national origin, and summary judgment in defendants' favor is proper. *See Sims v. New Penn Fin. LLC*, 906 F.3d 678, 680 (7th Cir. 2018) (affirming district court's decision to grant summary judgment because no reasonable jury could find defendant discriminated against plaintiffs based

---

[7] Plaintiffs attempt to undermine Carls' affidavit with Roppo's affidavit, in which he states that, to his knowledge, Carls was never involved in any of his personal dealing with Byline. (Dckt. #77-5 at 2). However, the fact that Carls did not personally deal with Roppo does not mean that Carls (as Byline's Chief Operating Officer) lacks personal knowledge as to why Byline denied plaintiffs' requests for a line of credit. Moreover, plaintiffs' assertion that "when asked whether Van Ede ever had any conversations with Tom Carls, Van Ede said not directly" mischaracterizes Van Ede's testimony. (PSOF Resp. ¶26). Although Van Ede testified that he did not discuss the allegations of plaintiffs' *complaint* with Carls, he also testified that he had direct discussions with Carls about *Roppo's file* and the *status of the loans*. (Dckt. #74-4 at 12).

on their race); *Hughes,* 2017 WL 3263475, at *4 ("Without evidence that connects [defendant's] allegedly incorrect decisions to [plaintiff's] race, he cannot support his claims of discriminatory intent" and summary judgment is appropriate).

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment, (Dckt. #72), is granted.

**DATE:** March 20, 2025

_____
**Jeffrey I. Cummings**
**United States District Court Judge**